et al. Okay, counsel for the appellant, the podium is yours. Thank you, and may it please the court, counsel. My name is Matt Bretz, and on behalf of all the plaintiffs, I will be addressing the first issue regarding foreseeability. Mr. Denton will be addressing the issue of Shamrock Trucking's independent negligence. I will be mindful of the clock, but I will attempt to take eight minutes and reserve four for Mr. Denton and three for rebuttal. Under Oklahoma law, which is well settled, defendants owed a duty of care to all persons who were foreseeably endangered by their conduct. That's the Wolford case. And then the Oklahoma Supreme Court in Blockhart v. Lucen says, whether a negligent event's injurious consequences could have been reasonably foreseen presents a jury question. Unfortunately, the district court didn't allow the jury to decide that question and took it as a matter of law that someone getting drowsy and falling asleep at the wheel is not foreseeable. There are three elements to something being a supervening act. One, that Fulcher got drowsy, that it was independent of a wad's negligence. Two, that Fulcher's actions were adequate to bring about the result. And three, that Fulcher drifting out of the lane onto the emergency shoulder was not reasonably foreseeable. And if the intervening act was foreseeable or should have been anticipated, then under the law it is not a supervening act and the defendant's original negligence remains the proximate cause of the injury. And here it's the second and third elements that prevent summary judgment and prevent this from being a supervening act. The second element, the expert testimony in the data recorder established that about one second before impact, the Fulcher van drifted onto the rumble strips. The data recorder then shows that between .2 and .1 seconds before impact, the rumble strips worked and Mr. Fulcher was steering to the left. There would not have been a collision. He was already steering to the left. There could not have been a collision. Is it your position that the – I appreciate your position that causation is generally a jury question unless the law squarely determines causation on the facts, on disputed facts. So is it your position here that Mr. Fulcher was not asleep? Certainly not. No, certainly not. He acknowledged that he was drowsy. He acknowledged that he went to sleep. And the data recorder shows that the rumble strips did their job. They woke him up and he started steering to the left and he admitted in the deposition, in his deposition, that at just a moment before impact, he saw the back of the semi. There's no doubt about that. I mean, up until this time, it appears to me that the state law of Oklahoma has been that if there's a car in the road and you can see it in time to evade it or stop or whatever it takes, that if you hit it, it's on you. How do we get past that in this case where – I mean, it's seemingly more innocent conduct on behalf of the truck than if the truck was just stopped in the traffic lane and they could see it. I'm glad you had your honor ask that question because I struggled with it. And then I realized something. Why were they citing cases from 1958, from 1961, from 1966? And it dawned on me that all of the cases they cite deal with when Oklahoma used to have contributory negligence. But Oklahoma got rid of contributory negligence in 1973. And every one of the cases they cite were from crashes that occurred before 1973. Fair enough. Do you have any cases, though, that have said that those cases are not good law because the Oklahoma negligence scheme changed from contributory negligence to comparative negligence? What we have are cases after them which deal with factual issues. And the court talks about the factual issues and the jury being required to decide comparison of fault. All of the cases that plaintiffs cite in the brief deal with factors that a jury may consider, such as in John Long where the defendant didn't have its lights on, didn't use flares, reflectors, etc., much in the same way Mr. Watt in this case did not have his lights on. Well, that would go to the question of whether you could see them. It certainly does. But it also goes to the issue of a jury looking at this and comparing the fault because now under comparison of fault, jurors are supposed to make that apportionment. It's no longer a question of is there any evidence, is there any way that the plaintiff can't be partially at fault under a contributory negligence? Is Oklahoma a pure comparative fault state? It's modified comparative. And so here the judge ultimately, the district court, weighed that evidence and concluded that 100% of the fault that it was an intervening or superseding incident. But all of the cases we cite in plaintiff's brief deals with factors that the jury must consider and from which they address that issue of comparison of fault. And many of them are very factually similar to this case where the defendant didn't have its lights on, where the defendant didn't put out the flares or the fuses or the triangles, where there was mixed visibility such as with fog or freezing rain or something like that. And here we have many of those same factors. So you agree that the truck being parked on the shoulder and even in the middle of the rumble strip was outside the traffic lane? Absolutely it was. And there was no legal violation for being parked there? I disagree with that, Your Honor. He was parked illegally for two reasons. He was parked illegally, one, because he didn't have lights on, two, because he didn't put out triangles within 10 minutes of being stopped. In fact, he was parked hours. Okay, the triangles is a federal regulation violation. What about the lights? Also a regulation. As a matter of state law, though, he wasn't breaking any laws. No, I would submit that federal law probably applies. And I shouldn't joke about it. I think the state traffic law is probably really important in some ways. But let me ask you a question. And you would also agree that when your client went outside the lane of traffic, that was a violation? It was, but it's also foreseeable. In fact, NHTSA, National Highway Transportation Safety Administration, says it's foreseeable. And, of course, this court's allowed to take judicial notice of publications, but NHTSA and the U.S. Department of Transportation says, Rumble strips, a wake-up call for drowsy drivers. The sound and vibration can wake a sleeping driver, giving him or her time to regain control of the vehicle. These runoff road crashes take a large toll, accounting for one-third of all traffic fatalities nationwide. Was this before the district court? This was not. And under three different Tenth Circuit Court of Appeals cases, this court is allowed to consider official government publications. That would be the Standing Akimbo case, the High Desert case, and also the Clapper case. I do just want to warn you that you were wanting some rebuttal and to give your opposing counsel some time, but it's yours. You do what you want. I'm going to step on his toes for just a minute. Okay. Thank you. Because I think it's important. Because the federal government says that what Mr. Fulcher did is foreseeable. The federal government says that it accounts for about a third of all traffic fatalities nationwide, or at least a contributing circumstance. In another one, NHTSA says NHTSA estimates that in 2017, 91,000 police-reported crashes involved drowsy drivers. These crashes led to an estimated 50,000 people injured and nearly 800 deaths. The district court said it's not foreseeable that Mr. Fulcher would drift out of his lane. He might get drowsy. He might fall asleep, drift out of his lane onto his shoulder. How is it possibly not foreseeable when it happened 91,000 times in the year that this incident happened? It's patently foreseeable. And it's important to note that it's a jury question because it's something that it is foreseeable. That's why we have rumble strips. There are a variety of reasons somebody might drift out of their lane, whether it's because the kids in the backseat are making noise or maybe choking on food, or whether it's because there's something wrong with the car, a mechanical problem, or a tire blows out, or a siren that they hear and crane in their neck to see what's causing this siren, and they drift onto the shoulder. People drift out of the lanes. I'd submit if everyone was asked to raise their hand if they've ever gotten drowsy behind the wheel or if they've ever drifted onto the shoulder and the rumble strips alerted them and caused them to drive back, I'd submit that everyone in this room would raise their hand. It's because it's foreseeable. And if it's foreseeable, it's not a supervening act, and it's a jury question under comparative fault. Thank you. I'll yield to Mr. Denton. Good afternoon, judges. I'm Michael Denton on behalf of all plaintiffs. I'm going to address briefly Section 2 of our brief. And one of the reasons it's so brief is because it doesn't matter if Section 1 fails. If Mr. Brett's arguments fail, arguing about whether or not we should have had the pleadings stricken at the motion to dismiss stage is moot. That's a de novo review. I wanted to point out one quick thing. There was a motion to certify a question that was filed, and I know that hasn't been brought up, and I don't know if that's ñ I'm not here to argue. I want to remind the court that's pending a resolution. And lastly, when I say ñ Well, I have a question about the motion to certify counsel. Yes, sir. Because that obviously just involves Claim 4. Would you still be pursuing that relief to satisfy a question or certify the question regarding that claim if we were to grant you relief on Claims 1 through 3? Yes. Because you want to sort of put a pause to litigation just to get an answer about the interpretation of Jordan B. Crane? We certainly don't want to pause. There's been enough of that due to COVID and everything else. But there are currently, I think, two different cases in front of the Oklahoma Supreme Court waiting for a ruling on this issue. There's an opinion that was issued 10 days ago by Judge Dishman in the Western District, which, by the way, affirmed the Stallmacher opinion that the Tenth Circuit judge came down with. It's an issue that needs to be addressed at some point in time. I know I heard yesterday in oral arguments in Denver that how do we keep this from happening again and again? You keep coming back with the same arguments. Here we are. This keeps occurring, and you can see from the conflicts of authority this is an issue that keeps occurring. In fact, I've read one of the opinions that talked about the Jordan v. Cates application suffered from chronic incorrectness. So it's time for the Oklahoma Supreme Court to speak on that. I realize this court can't make it do so, but it can certainly certify yet another. In the question that you suggested in your motion to certify, do you think that particular question would give us the answer we need to apply the law substantively to this claim? With regard to negligent hiring, negligent retention, negligent supervision, negligent retention, yes. Negligent entrustment is settled. There's no doubt about that. I further don't believe the others are in doubt, but I'm prepared to discuss those. We're running very short on time. Jordan v. Cates was limited to facts. A unanimous Oklahoma Supreme Court in Fox v. Mize said that. We've got no fewer than four different judges and federal judges in Oklahoma who said, well, it doesn't really mean that. I don't know how it doesn't mean that. I'm not going to read it to you because you guys have that available to read to you. I did ask, in our brief in this case, at page 34, footnote 18, we cited to a law review article from the Virginia Law Review that says, when a confined case's facts recur, the case will continue to be treated as good law in all other factual scenarios. However, the confined case will be regarded as having been overruled. We'll reserve the remaining time for Mr. Bretz. Thank you, Counsel. Thank you. Thank you, Your Honors. My name is Janice Proctor Murphy with the law firm of Fenimore Craig, representing Shamrock Foods Company. With me is Chris Davis of Crow and Dunleavy, who is with Mr. Awad. I will be arguing today on behalf of both defendants at police. As Judge Carson recognized, controlling Oklahoma law is that Ryan Fulcher was the superseding cause of this accident. There are three undisputed facts that compel this conclusion. One, he admitted that he fell asleep, and he admitted that the only reason he did not see the tractor trailer was because he fell asleep. Two, plaintiffs have admitted there was nothing to obstruct Mr. Fulcher's view of the parked tractor trailer, and visibility was at least a quarter of a mile. And three, plaintiffs admit that the tractor trailer was parked entirely off the roadway. These three factors combined compel the conclusion that he was the superseding cause, and there is no jury question. Repeatedly, Oklahoma has said that when a sleeping or otherwise inattentive driver drives into the back of a visible parked vehicle, particularly one that is parked off the roadway, they are the superseding cause. The Sturdivant case is controlling here, Your Honors, and I understand the position raised for the first time now in oral argument, that contributory negligence is a factor here. It is not. It has been repeatedly held by courts, including federal district courts, up until just very recently, 2019, discussing this fact and discussing this law. So there really is no question that this is the controlling law here. In Sturdivant, the facts were analogous in controlling. In that case, the defendant's truck was parked partially on the highway. The plaintiff driving easily could have seen this vehicle, but failed to do so. He looked away. He acknowledged that it was his fault in looking away, and he ran into the vehicle. And the court said, in those circumstances, because you saw the vehicle, could have avoided it and didn't, you are the superseding cause of this accident, and the defendant's underlying negligence in parking illegally is not relevant. Why is there not a jury question on foreseeability here, though? There isn't a question on foreseeability because of these unique facts. And given these unique facts, it is something that can be decided by the court properly as a matter of law. Well, but if the argument turns upon the unique facts, can't you easily distinguish Sturdivant? You said, in that case, the truck driver was parked on the side of the highway. I don't recall that to be true. I thought the truck driver was going to work at a school and do maintenance, and it was essentially a driveway into the school. And here we have a commercial trucker, who, by the way, is somewhat mysteriously states away from where he's supposed to be and somehow got lost in 2017, who is a violation of federal regulatory law about what he is supposed to do on the side of the highway. So if the argument turns upon facts, can't we weigh those two cases very differently? And I don't think that you can interpret these facts any differently, but let me address Sturdivant to you. He was actually parked in the highway. The back of the truck was parked in the highway. He was turning into a school or a construction site, got stuck in the mud, so a portion of the truck was in the roadway. So it was sticking out, and even though it was a violation of the law for his truck to be parked there, and it was illegal for him to do that, the court said nonetheless, even if he was negligently parked, because the plaintiff could have seen the vehicle, could have avoided it, and didn't, they were the superseding cause. What about Moat? What about Moat, Your Honor? Yes, what about Moat? Do you want me to ask a more specific question, or do you want to run with that? No, no, no. I will run with Moat. Moat, there was a situation where he was stopped at the crest of the hill. He could at that point see the vehicle parked. He went driving down the hill. Two cars were parked in the roadway talking to each other. He rode down the roadway, braked too late, so to avoid hitting that one, he swerved, and then he hit the oncoming car. And again, the court said, you are the superseding cause, because you saw the vehicle, it was visible to you, you could have avoided the accident, but you didn't, and therefore the negligence there of parking in the road is not relevant. You are a superseding cause, and you cannot recover. So, I guess you would say, with respect to the two federal regulation violations, you don't disagree that those were violations of federal regulations, do you? The cones, or the placards, and the lights? We do on one, Your Honor. In fact, there is video that the lights were on when the trooper drove up. Okay, so that's a fact dispute. But regardless, we assumed for purposes of this argument. Give me two violations for my hypothetical. We've got two violations of federal law. I guess your position would be that Sturtevant, because Sturtevant also dealt with a car sticking into the road that was violating the law, that Sturtevant would take care of that issue. Correct. Okay. And I think also, Your Honor, with the triangles, he was asleep. So, because he was asleep, whether the triangles were out or not would not be dispositive here. Okay, I guess I don't understand why that would be. Well, Your Honor, he was asleep. The purpose of the triangles are to be reflective, to be visual, to warn someone. So, if he is asleep, the fact that the triangles are there aren't going to help him. All right, I thought you were talking about the trucker. Sorry. No, sorry. Nope, that's all right. Counsel, what do you say to the appellant's argument that made during the presentation this morning that the federal government says that what Mr. Fulcher did is foreseeable? How should we be thinking about these authorities that the appellant has asked us to take judicial notice of in resolving this case? I appreciate that, Your Honor. I think the response to that is this court sitting in diversity applies Oklahoma law, and Oklahoma says, based on these three undisputed facts, that he is the superseding cause. If the Oklahoma legislature would like to change the law, then the Oklahoma legislature is free to do that. But there's no indication that that is happening, and there's no indication that the court is backing away from this doctrine. Okay, let me see if I can understand how this plays out. So, for matters of just generally, do you agree that it's foreseeable that someone's going to go out on the traffic lane onto the Rimble Strip? Your Honor, is it purely hypothetical? Do I agree that drivers can be inattentive? Yes, do I believe that? You've probably hit a Rimble Strip yourself. It's foreseeable that if – we're not going to talk about my driving record. So, it's foreseeable that there could be an inattentive driver. What isn't foreseeable is that inattentive driver will drive off the road and collide into a fully visible vehicle parked off the roadway. And Oklahoma says this repeatedly. Okay, let me ask you this. So, do you think that we could say it is foreseeable that a drowsy driver, that an inattentive driver is going to go off outside the traffic lane and hit the Rumble Strip? But it doesn't matter, because Oklahoma has said that that's a superseding event. Exactly right, Your Honor. So, it can be both foreseeable and a superseding event. Correct, Your Honor. But again, I think there's a difference between someone being momentarily inattentive and someone falling asleep. Why is that so? Why do I think that? Is that an important distinction between momentarily? Well, I think in this case it resulted in criminal negligence charges against him. But for purposes of Oklahoma, the application of Oklahoma law. I think it doesn't matter if you're inattentive for two seconds or inattentive for, you know, five minutes. If you're inattentive and you're responsible for the crash, then you are the one that's the superseding cause. Okay. Counsel, I'm sorry, I'm just struggling with one aspect of this. Sure. There have been several points of the discussion where I've heard either you or opposing counsel talk about factual disputes. And, for example, a moment ago Judge Carson asked you about different federal regulations that the driver or WAD may have violated. And you said, well, there's a factual dispute on one of these. And when I hear factual dispute, I think, well, if the district court here at summary judgment is to make some factual determinations, they had to do so and view those facts in a light most favorable to the other side, not to your side, because of your being the moving party. So why wasn't it air for the district court to resolve these factual disputes in a manner that was not taking them to a light most favorable to the plaintiffs? Well, it's not – in this case, let me talk about the triangles. The triangles, again, aren't relevant in this case, not cause and fact, because his eyes were closed. He couldn't see them. So there were no material facts that he would argue that would be a dispute. Correct. That's exactly right. That would preclude summary judgment in our favor. On legal cause, not factual cause. Exactly right. Exactly right, Your Honor. I want to be 100 percent clear on that. We think that because these are undisputed material facts, and on the basis of the three facts that I started this argument with and I will close this argument with, this court can affirm the summary judgment in favor of the defendants at police. And those facts are he admitted he fell asleep, and the only reason he did not see the tractor trailer was because he was asleep. That visibility was not an issue. He could have seen the tractor trailer had his eyes been open. There was no obstructions, no factual issue there. And finally, this vehicle was parked entirely outside the roadway. In those three circumstances, even, and I want to respond to Judge Carson's question, he was not cited by the state police in this case for no violation. There was no violation of state law. And if you have no other questions, I'll sit down. Thank you. Thanks. Go ahead. Thank you, Your Honor. The claim that there are undisputed facts or three undisputed facts is not accurate. Mr. Fulcher did not ever testify that he could have seen the truck with enough time to avoid hitting it. In fact, if the court looks at the briefing by the defendant on page 21 of the defendant's brief, where they make that representation to the court that Mr. Fulcher said that, the citation isn't even to Mr. Fulcher's deposition testimony. The citation is to somebody else's deposition. And if you look at the language, that was not a question or an answer. It was never something that was said. Certainly, the district court- Do you dispute it? Oh, it's absolutely disputed. He said that when the rumble strips, when he hit the rumble strips a second before impact, when he hit those, that he opens his eyes and he sees it. But at that point, he's steering left already, and there's no way that somebody could avoid hitting it. I mean, isn't it not plausible, though, that he could have seen it earlier if he admits his eyes were closed when he hit the rumble strip? That would be a question of fact for the jury to draw conclusions from. Even the district court acknowledged that there was mixed visibility that night, and the Sturdivant case that they rely upon so heavily is there were no weather or other conditions. Okay, let me ask you this, though, about Sturdivant, and I'm going to let you go over a little bit here while we clear a couple of things up. Thank you. You agree that to the extent we're going to try to make a case based on a violation of federal law that Sturdivant says the violation itself really doesn't matter? Sturdivant, pre-comparative fault, would suggest that. Okay. Yeah, and I said there two directions. Yeah, so your position is, let me try to give you a little easier one. So your position, Sturdivant, whether it's dead on against you, it's at least adverse to you on that issue, on whether the violation of the law means anything. I'd say it's adverse, it's not determinative, though. Okay, fair enough. Because of the different factors. Here we have no lights, it was dark, it was rainy, there are no cones or triangles, which, granted, he may not have seen, but the testimony in the case was if he would have hit one of those cones at 70 miles an hour, it would have exploded. He would have had notice even before he got to the rumble strips that there was something parked there. So certainly their absence of cones contributed to this, but they're all factors, whether it's under Sturdivant or Beasley or whether it's under the myriad of cases since comparative fault was adopted in Oklahoma. But there are factors from which a jury could conclude that there is fault and that it's certainly foreseeable, not just based upon NHTSA or the DOT, but also based on jurors' common knowledge and experience. Okay. Thank you, Counselor. Thank you. Thank you. The case is submitted. Counselor, excuse. Thank you both for your time.